LOUIS O. VAN DOREN, Appellant, *v.* MARY H. MACKENZIE, Respondent.

First Department, March 5, 1920.

Attorney and client — suit by attorney for accounting and establishment of lien — evidence — dismissal of complaint erroneous.

The plaintiff, an attorney, who had rendered professional services for the defendant and advanced money on her behalf and had received a certain certificate of stock under an agreement that he was to hold said stock as

collateral security for moneys expended and for services rendered and to
be rendered, brought a suit to have the account between himself and the
defendant judicially settled and the amount due him fixed and determined,
to have a lien adjudged to exist in his favor on the said certificate of stock,
and a time fixed when the defendant should pay the balance due, and that
in default thereof the said certificate of stock be sold and the plaintiff's
lien satisfied.   On all the evidence,

*Held*, that the plaintiff established every allegation of the complaint and was
entitled to the judgment demanded.

It was error for the court to dismiss the complaint on the theory that the
plaintiff failed to prove that the defendant, an old lady, was advised of the
terms and effect of the collateral security agreement, *first*, because that
issue was not raised by the pleadings and *second*, because the evidence
established that said agreement was the free and voluntary act of the
defendant and that she fully understood the tenor and effect thereof.

APPEAL by the plaintiff, Louis O. Van Doren, from a judg-
ment of the Supreme Court in favor of the defendant, entered
in the office of the clerk of the county of Bronx on the 5th day
of June, 1919, upon a decision of the court rendered after a
trial at the Bronx Special Term, and also from an order
entered in said clerk's office on the 17th day of February,
1919, denying plaintiff's motion to open the case and receive
additional exhibits.

*Francis M. Scott* of counsel [*Scott, Gerard & Bowers*, attorneys],
for the appellant.

*Max Halprin*, for the respondent.

DOWLING, J.:
Plaintiff, an attorney, in his complaint alleges that prior to
July 17, 1916, at the special instance and request of defendant,
he rendered and performed professional services for her as her
attorney and counsel in various matters and laid out sums of
money in her behalf, and that on July 17, 1916, defendant
having requested plaintiff to advance and take up a loan due
by her to the Glen Cove Bank as collateral security for which
there had been pledged by her certain shares of the capital
stock of Mackenzie & Company, Ltd., she made, executed
and delivered to plaintiff an instrument in writing, a copy of
which is annexed to the complaint, and whereby he was to
receive said stock then held by the bank and to hold the same

as collateral for the repayment to him of his expenditures and as security for payment of his services theretofore rendered and to be rendered. It is further alleged that plaintiff thereupon advanced to the bank the amount of defendant's loan, with interest, and defendant delivered the stock to plaintiff to carry out the terms of the agreement; that thereafter the capital stock of Mackenzie & Company, Ltd., was reduced, and defendant became entitled to receive a new and different certificate representing her interest in the reduced capital stock, and in conjunction with plaintiff, she sent the original certificate of stock to London and thereafter, about October 6, 1916, pursuant to defendant's written instructions, the new certificate was delivered to plaintiff, and defendant executed and delivered attached to it a power of attorney or stock power, to plaintiff, duly signed, executed and acknowledged for the purposes and objects stated in the agreement of July 17, 1916. It is averred that plaintiff duly performed all matters and things required on his part to be done and performed by the agreement; that subsequent to July 17, 1916, plaintiff continued to perform services for defendant and to make advances for her until July 27, 1917. The services performed are alleged to have been of the reasonable value of $5,910, with disbursements amounting to $378.61, making a total of $6,288.71, whereof the sum of $1,748.84 has been paid, leaving a balance unpaid of $4,539.87. It is also alleged that the moneys advanced amounted to $1,179.91, whereof a balance of $100 is still due, represented by defendant's promissory note still held by plaintiff, and that defendant is entitled to a credit for a balance of $4.54 on a certain account in the Columbia Trust Company, Bronx Branch. On July 27, 1917, an itemized bill of all of plaintiff's claim was furnished to defendant, and again on June 15, 1918, and payment thereof demanded on each occasion, but no part thereof was paid. The certificate of stock in question is described and a copy thereof and of the power of attorney attached thereto is annexed to the complaint. The total amount due to plaintiff is $4,635.33. The judgment demanded is that the account between plaintiff and defendant be judicially settled and determined; that the amount due and owing to the plaintiff by the defendant be ascertained and fixed;

that for said amount so fixed and determined to be due to the plaintiff, plaintiff be adjudged to have a lien upon the said certificate of stock and the shares of the capital stock of Mackenzie & Company, Ltd., therein described; that a time be fixed wherein defendant shall pay the said balance to the plaintiff and that in default thereof the said certificate of stock be sold and the amount of plaintiff's lien thereon paid out of the proceeds of said sale under such terms and conditions as to the court shall seem just and proper.

The answer of the defendant admits (by not denying) the first six paragraphs of the complaint, including the rendition of plaintiff's services; the execution of the agreement in question; the request to plaintiff to take up defendant's loan from the Glen Cove Bank; the advance by plaintiff of the amount to take up said loan; the delivery to plaintiff of the certificate of stock pursuant to the agreement; the receipt and delivery to plaintiff of the stock issued on the reduction of the capital stock and the execution by defendant of the power of attorney for the purposes of the agreement; that plaintiff duly performed all that he was required to do under said agreement; and that plaintiff continued to render services and make advances for defendant until July 27, 1917. It is also admitted that the copies of the new certificate of stock and the power of attorney attached thereto, annexed to the complaint, are correct.

The only denials contained in the answer of defendant are (1) of the value of plaintiff's services; (2) of knowledge or information as to the amount of the advances, though she admits that she made a promissory note to plaintiff; (3) of the opening of the bank account at her request or with her moneys, and of the balance to her credit therein, though she admits such an account was opened; (4) of the general allegations as to the rendition of account, though she admits that plaintiff rendered accounts and bills for professional services and that payment was demanded; (5) of the rendition of the account of June 15, 1918, though she admits she received from plaintiff the detailed account of which a copy is annexed to the complaint; (6) of the amount due. There is also a separate defense of payment.

In my opinion the plaintiff has established every allegation of his complaint and was entitled to the judgment asked. The

record shows professional services performed by plaintiff for defendant and advances made by him for her account from February, 1915, to July, 1917. It would be difficult to conceive of a more detailed, exhaustive and careful account than was twice furnished by plaintiff to defendant, showing every item of service rendered and of expenditures and advances made by the former to the latter. Not only did plaintiff prove every item of his account to be correct, but defendant made no effort to controvert or attack it. In fact, she had approved plaintiff's bills on July 14, 1916, and initialed each page thereof. So that there was no issue as to the rendition of plaintiff's services or the amount of his expenditures and advances raised upon the trial. Nor was the value of the services questioned. They were supported by plaintiff's testimony and by that of an expert, and no effort was made by defendant to introduce any testimony to offset the case thus made.

The learned court at Special Term refused to grant judgment for plaintiff upon the theory that " upon the whole case the plaintiff has failed to satisfactorily prove that this old lady was advised of the terms and effect of the agreement which she signed on July 17, 1915, [*sic*] as should have been done under the circumstances here disclosed, and a court of equity should not enforce it. Complaint dismissed, with costs." The court made no findings whatever, and its only decision was as follows: " The above entitled action coming on to be heard at a Special Term for Trials, held in the county of Bronx, and the court having heard the proofs and due deliberation having been thereon had, and after hearing counsel for the plaintiff and defendant, the court doth hereby direct that the complaint of the plaintiff should be dismissed with costs, and that judgment be entered accordingly."

This was followed by a judgment dismissing the complaint of the plaintiff, with costs.

It should be noted that no such issue was tendered by the answer as that upon which the court seems to have acted. On the contrary, the answer admitted the making of the agreement in question and that plaintiff had performed all he was called upon to do thereunder. The issues tendered were really only two: (1) The value of plaintiff's services; (2) whether he had been fully paid therefor. There was no suggestion before

the trial that defendant did not realize fully the nature of the instrument she was signing.

Treating the judgment as one based upon a failure of proof to support the allegation of plaintiff's complaint, it is erroneous, for the plaintiff made out his case in every particular, and sustained every reasonable. burden of proof. Treated as a judgment based on some affirmative defense, it could not stand, for it was without any issue raised by the pleadings, and there are no findings to form a basis for the judgment.

Defendant was fully acquainted with all the details of her transactions with plaintiff when the agreement in question was signed and was acquainted with all the surrounding circumstances. She knew the plaintiff desired to have his account with her settled as to amount, that he desired security therefor, and that he was about to leave town for a long trip. For on July 10, 1916, plaintiff had asked the defendant to call at his office on Friday (the fourteenth), as he was preparing a statement of his charges against her, which she would receive by that time and he wanted her to go over it, and to come to his office and approve it in writing if she found it satisfactory and to make some arrangement about its liquidation; adding that he was about to leave town on July eighteenth for nearly two months. He sent her his itemized statement of account on July eleventh, and said in his accompanying letter: " I would be glad to have you call here with this statement and go over it with me and if satisfactory, approve it, and I will ask you to make some arrangement to secure the payment of this account and would be pleased to have your suggestions in that regard when you call here Friday of this week."

On July eleventh defendant wrote a letter to plaintiff, wherein she said: " I wrote Mr. Grant, London, about the 20th of June to hurry my dividend and share of stock sale returns over, would think it might be best for you to cable him as I am anxious to have funds for Mr. Lynch's charges, the will matter, part, if not all, your charges, and to meet Taxes."

Defendant did in fact call at plaintiff's office on Friday, July fourteenth, and saw his clerk McClenthen and then wrote in his presence at the end of the bills, just below the total amount then due, $4,232.66, the following:

" I have received and examined the foregoing bills and approve the same, and agree to pay them.

"Dated N. Y. *July* 14, 1916.   " MARY H. MACKENZIE."

The reason assigned for this rather unusual procedure seems to be a reasonable one, both her advanced age and the amount of litigation she had been involved in seeming to justify it, as well as her habit of frequently changing attorneys. At this time she knew as well all about the possible tax sale of her property at Oyster Bay.

Plaintiff proved most conclusively that when on July 17, 1916, the defendant executed the agreement in question, she was fully advised of its nature, effect and extent. It was read to her in full; she was asked if she understood it; she replied that she did; she signed it; and at the same time she received a copy of the instrument from plaintiff's clerk. On July nineteenth she accompanied the same clerk to the Glen Cove Bank to identify him and when he paid for plaintiff the amount of her loan from the bank, she signed the receipt to the bank for the stock, which was turned over to plaintiff under the agreement. She had previously asked plaintiff to pay off this loan, as well as two judgments, which he did.

The defendant's grievance seems to be, not that she signed this agreement without fully understanding its terms, but that it was part of the consideration therefor that plaintiff should obtain a loan for her of $1,200 to protect certain of her real estate from an approaching tax sale. I am convinced upon the record that no such condition was made nor did plaintiff ever agree to obtain such a loan. But even if this were so, defendant had no cause for complaint, for plaintiff being out of the State, two of his clerks, McClenthen and Meegan, attended the tax sale on July 24, 1916, the former having $600 of his own money with him, and they voluntarily endeavored to protect the defendant at the sale. This they did because she was a client of plaintiff, their employer, who had started away on his vacation as he had informed defendant he was about to do. They bid the property up to $2,500, twice as much as defendant claims was to be raised by loan to protect her at the sale. She was present at the sale, made no protest that her rights were not being adequately protected, and did not request them to bid

First Department, March, 1920. [Vol. 190.

any larger amount. The letter which defendant wrote to plaintiff on July 25, 1916, the day after the tax sale, shows that she then made no claim that she had any such agreement with plaintiff to obtain a loan of $1,200 for her as she now asserts. On August 1, 1916, she signed the following letter, which was dictated in her presence by plaintiff's clerk, who gave her a copy thereof:

" GLEN COVE, N. Y., *August 1st*, 1916.
" MR. PETER GRANT and MACKENZIE & CO., LTD.,
    " 118 Leadenhall Street,
        " London, England:
" DEAR SIRS.— There is enclosed herewith my certificate for 339 shares of the Preferred stock of this Company, which I have indorsed in blank.

" It is sent to you in accordance with the scheme for the reorganization of the Company by a reduction of the Preferred stock, which scheme has, I understand, been approved by the court.

" The new stock certificate should be made out in my name and sent to my attorney Louis O. Van Doren, as he has held this stock as security for various advances made to me. The draft in payment of the reduction should also be made out in my name and sent to him for delivery to me.
            " Yours very truly,
                " MARY H. MACKENZIE."

At the same time plaintiff's clerk dictated in her presence the following letter:

                    " *August 1st*, 1916.
" MR. PETER GRANT,
    " 118 Leadenhall Street,
        " London, England:
" DEAR SIR.— Enclosed herewith is a letter of direction and authorization signed by Miss Mackenzie, together with her certificate No. 23 for 339 shares of Preferred stock of Mackenzie & Co., Ltd., indorsed in blank by her.

" I would ask you to send the new certificate made out in her name to me, for I hold this stock as security for advances made to her, in accordance with the memorandum agreement, a copy of which is enclosed herewith.

" The draft in payment of the stock reduction should be made out to Miss Mackenzie's order and accompany the new stock certificate.

" Both Miss Mackenzie and the writer would greatly appreciate the receipt of this stock and draft as soon as is possible in the carrying out of the reduction scheme.

" Yours very truly,
" LOUIS O. VAN DOREN,
(Enclosures). By H. McC."

The new certificate of stock sent in accordance with these two letters having arrived, defendant signed the power of attorney indorsed thereon filled out to plaintiff, so that the entire paper read as follows:

" No. 8 4068 Shares
" 4% Preference Share Certificate
" MACKENZIE & COMPANY, LIMITED.
" Incorporated under the Companies Acts 1862 to 1898.
" CAPITAL, £82,536
" Divided into 63,600 Preference Shares of £1 each numbered 1 to 63,600 and 18,936 Ordinary Shares of £1 each numbered 63,601 to 82,536.

" The Preference Shares are entitled out of the profits to a fixed dividend of 4% per annum payable half yearly on the 1st January and 1st July in each year.

---

" THIS IS TO CERTIFY that Miss Mary Helen Mackenzie, Garvie's Point, Glen Cove, Nassau County, New York, U. S. A., is the Registered Proprietor of Four thousand and sixty-eight fully paid 4% Preference Shares of £1 each, Numbered 30961 to 35028 in the above Company subject to the Memorandum and Articles of Association thereof.

·" Given under the Common Seal of the Company this 11th day of Sept. 1916.

[Seal
Mackenzie
& Company,
Limited]

PETER GRANT
GEO. ALLAN GRANT, *Directors.*

" JAS. P. WINGFIELD, *Secretary.*

" N. B.   No transfer or [*sic*] any portion of the stock represented by this certificate will be registered until it has been deposited at the Company's offices.

" KNOW ALL MEN BY THESE PRESENTS, That I, Mary Helen Mackenzie, do hereby constitute and appoint Louis O. Van Doren to be my true and lawful attorney for me and in my name and behalf, to sell, assign and transfer to.......... the whole or any part of my 4068 Preference Shares of the Capital Stock of the Mackenzie & Company, Limited, and for that purpose to make and execute all necessary Acts of Assignment and Transfer.

" In witness whereof I have hereunto set my hand and seal this 6th day of October, 1916.

"MARY HELEN MACKENZIE [L. S.]

" Sealed and delivered in
    the presence of
            " AUSTIN MEEGAN
            " ANTONIO C. ASTARITA.

" STATE OF NEW YORK           }
" CITY AND COUNTY OF NEW YORK, } ss.:

" On this 16th day of October, 1916, before me personally came Mary H. Mackenzie to me personally known and known to me to be the person described in and who executed the foregoing power of attorney to transfer stock and she thereupon duly acknowledged to me that she executed the same.

" ANTONIO C. ASTARITA,<br>" Notary Public,<br>" N. Y. Co."

For the certificate of stock with the power of attorney thus attached, plaintiff gave to defendant the following receipt:

" NEW YORK, October 6th, 1916.

" Received from Miss Mary H. Mackenzie certificate No. 8 for 4,068 preference shares of Mackenzie & Company, Limited, bearing attached thereto her power of attorney; being received and held by me pursuant to Miss Mackenzie's memorandum of July 17th, 1916.        LOUIS O. VAN DOREN."

Defendant never sought to repudiate the agreement in question, nor was any claim ever made that she did not under-

stand it or freely execute it.    At the time she signed it she had other property on Long Island, at East Moriches, Speonk and the homestead property at Glen Cove; some of this real estate was incumbered by mortgages.

She has always received the dividends on the stock in Mackenzie & Company, Limited.

Upon this record I am convinced that the agreement of July 17, 1916, was the free and voluntary act of defendant; that she fully understood its tenor and effect; that she deliberately executed it to secure plaintiff for his services and advances, past and future; that there was no other consideration for its execution and that plaintiff never agreed to secure a loan for her of $1,200 as part of the consideration therefor; that she always regarded and treated it as a valid and binding instrument; that plaintiff has fully performed all his obligations thereunder; that plaintiff has established the rendition of the services and the amount of the advances as alleged, and the value thereof as stated in his complaint; that he has acted in entire good faith with the defendant and is entitled to the judgment demanded.    It may be noted that as early as July 21, 1917, he offered to subordinate his claim against this stock to enable defendant to secure a loan from a bank to prevent foreclosure of a mortgage on her property.

The judgment and order appealed from will, therefore, be reversed, with costs to appellant, and judgment entered in favor of plaintiff for the relief prayed for.    Let findings be proposed in accordance therewith.    Plaintiff has voluntarily stated in his brief that he seeks no harsh judgment against defendant; that what he wishes primarily is to have his claim liquidated and settled and his lien upon the stock judicially established, and that he is quite content that defendant be given any reasonable time to pay her indebtedness without a forced sale of her stock.    It seems to us that such a reasonable time would be six months after the entry of judgment herein, and the judgment may so provide.

CLARKE, P. J., SMITH, PAGE and PHILBIN, JJ., concur.

Judgment and order reversed, with costs, and judgment ordered in favor of plaintiff for the relief prayed for.    Settle order on notice.